# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

**FRANK HOON**, on behalf of himself and all others similarly situated,

                  Plaintiff,

v.

**JOHNSON CONTROLS, INC.,**

                  Defendant.

No. 2:25-cv-955

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Frank Hoon ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Johnson Controls, Inc. ("Johnson Controls" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1. This class action arises from Defendant's failure to protect highly sensitive data.

2. Defendant is a company that provides "building technology and software as well as service solutions from some of the most trusted names in the industry."[1] Defendant's North American headquarters is located in Milwaukee, Wisconsin, but Defendant maintains operations throughout the United States.[2]

---

[1] *Johnson Controls,* LINKEDIN, https://www.linkedin.com/company/johnson-controls/ (last visited July 3, 2025).

[2] *Find a Representative Near You,* JOHNSON CONTROLS, https://www.johnsoncontrols.com/find-a-rep (last visited July 3, 2025).

3.     Defendant stores a litany of highly sensitive personal identifiable information ("PII") about its clients and its current and former employees. But Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4.     It is unknown for precisely how long the cybercriminals had access to Defendant's network before the breach was discovered. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its clients' and current and former employees' PII.

5.     On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII. In short, Defendant's failures placed the Class's PII in a vulnerable position—rendering them easy targets for cybercriminals.

6.     Plaintiff is a former employee of Defendant and a Data Breach victim. He brings this class action on behalf of himself, and all others harmed by Defendant's misconduct.

7.     The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before this data breach, its clients and current and former employees' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

## PARTIES

8.     Plaintiff, Frank Hoon, is a natural person and citizen of Pennsylvania. He resides in Mechanicsburg, Pennsylvania where he intends to remain.

9.     Defendant, Johnson Controls, Inc. is a Wisconsin corporation with its principal place of business in the United States at 5757 N. Green Bay Ave., Milwaukee, Wisconsin 53209

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendant are citizens of different states. And there are over 100 putative Class members.

11.     This Court has personal jurisdiction over Defendant because it is headquartered in Wisconsin, regularly conducts business in Wisconsin, and has sufficient minimum contacts in Wisconsin.

12.     Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

### Defendant Collected and Stored the PII of Plaintiff and the Class

13.     Founded in 1885[3], Defendant states it possesses the "world's largest portfolio of building technology, software and services."

14.     Defendant employs over 100,000 people through its corporate operations and subsidiaries across 150 countries[4] and reported $ 7.4 billion in sales in fiscal quarter 4 of 2024.[5]

---

[3] *See Celebrating 140 years of powering your mission*, JONSON CONTROLS, https://www.johnsoncontrols.com/about-us/our-company/celebrating-140-years (last visited July 3, 2025).
[4] Sergiu Gatlan, *Johnson Controls starts notifying people affected by 2023 breach*, BLEEPING COMPUTER (July 1, 2025), https://www.bleepingcomputer.com/news/security/johnson-controls-starts-notifying-people-affected-by-2023-breach/.
[5] *Johnson Controls Reports Q4 and FY24 Results; Initiates FY25 Guidance*, JONSON CONTROLS, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.johnsoncontrols.com/-/media/project/jci-global/johnson-controls/us-region/united-states-johnson-controls/media-center/documents/q4-fy24-earnings-release-final.pdf (last visited July 3, 2025).

15.     As part of its business, Defendant receives and maintains the PII of tens of thousands of its clients and current and former employees.

16.     In collecting and maintaining the PII, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their PII.

17.     Under state and federal law, businesses like Defendant have duties to protect its clients and current and former employees' PII and to notify them about breaches.

18.     Defendant recognizes these duties, declaring in its "Privacy Notice" that "[a]t Johnson Controls, we value your privacy and are committed to protecting your personal information in accordance with fair information practices and applicable data privacy laws."[6]

19.     Defendant further promises its customers that it is a "partner in privacy," and is "helping the customer to use the product confidently and compliantly."[7]

20.     Despite recognizing its duty to do so, on information and belief, Defendant has not implemented reasonably cybersecurity safeguards or policies to protect its clients' and current and former employees' PII or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and steal clients' and employees' PII.

---

[6] *Privacy Notice*, JONSON CONTROLS, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.johnsoncontrols.com/-/media/project/jci-global/johnson-controls/us-region/united-states-johnson-controls/privacy-policy/global-privacy-notice/documents/jci_privacy_notice_2025_english.pdf (last visited July 3, 2025).

[7] *Data Privacy Sheets,* JONSON CONTROLS, https://www.johnsoncontrols.com/trust-center/privacy/data-privacy-sheets (last visited July 3, 2025).

*Defendant's Data Breach*

21.    On September 24, 2023, Defendant discovered it was hacked in the Data Breach.[8]

22.    According to Defendant, it "launched an investigation with the support of leading third-party experts and took steps to prevent further access and remove the actor from the network."[9]

23.    Alarmingly, Defendant admitted that "an unauthorized actor accessed certain Johnson Controls systems from  February 1, 2023 to September 30, 2023 and *took information from those systems*."[10]

24.    On information and belief, because of Defendant's Data Breach, at least the following types of PII were compromised:

   a.    names;

   b.    dates of birth;

   c.    addresses;

   d.    driver's license numbers; and

   e.    Social Security numbers.

25.    Due to the obfuscating language in Defendant's Breach Notice, it is unknown when how the Data Breach occurred, many people were impacted by the Data Breach or what type of PII was stolen by the "unauthorized actor."

26.    And yet, Defendant waited until June 30, 2025, an astonishing ***645 days***, before it began notifying the Class.[11]

---

[8] Defendant's notice of data breach ("Breach Notice") is attached as **Exhibit A**.
[9] *Id.*
[10] *Id.*
[11] *Id.*

27.     Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

28.     And when Defendant did notify Plaintiff and the Class of the Data Breach, Defendant acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiff and the Class:

> a.     "[w] remain vigilant for incidents of fraud and identity theft, including by regularly reviewing your account statements and monitoring credit reports;"
>
> b.     "[y]ou should also be cautious of any unsolicited communications asking for personal information. In addition, if a username and password are listed among your information above, we recommend that you change your login credentials for online accounts"[12]

29.     Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing its clients' and current and former employees' PII. Thus, Defendant caused widespread injury and monetary damages.

30.     Since the breach, Defendant states it has "taken appropriate steps to enhance our security controls."[13]

31.     But this is too little too late. Simply put, these measures—which Defendant now recognizes as necessary—should have been implemented *before* the Data Breach.

---

[12] *Id.*
[13] *Id.*

32.     Moreover, Defendant has not explained what its "enhanced security controls" actually entails. Thus, upon information and belief, Plaintiff's and Class Members' PII remains unsecure.

33.     On information and belief, Defendant failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures.

34.     Further, the Notice of Data Breach shows that Defendant cannot—or will not—determine the full scope of the Data Breach, as Defendant has been unable to determine precisely what information was stolen and when.

35.     Defendant has done little to remedy its Data Breach. True, Defendant has offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class members for the injuries that Defendant inflicted upon them.

36.     Because of Defendant's Data Breach, the sensitive PII of Plaintiff and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class members.

***Cybercriminal Group "Dark Angels" is Linked to the Data Breach***

37.     Worryingly, based on the technology used in the Data Breach, cybersecurity analysts have linked the Data Breach to the "Dark Angels" ransomware group.[14]

---

[14] N. 4.

38. Dark Angles operators breach corporate networks and move laterally until they eventually gain administrative access.[15] During this time, they also steal data from compromised servers, which is later used as additional leverage when making ransom demands.[16]

39. Dark Angels also operates a data leak site named "Dunghill Leaks" that is used to extort its victims, threatening to leak data if a ransom is not paid.[17]

40. On September 27, 2023 Nextron Systems threat researcher Gameel Ali tweeted a sample of a Dark Angels' encryptor containing a ransom note stating it was used against Johnson Controls." [18]

```
--------------------------------------------------------------
            HELLO dear Management of Johnson Controls International!

If you are reading this message, it means that:
        - your network infrastructure has been compromised,
        - critical data was leaked,
    - files are encrypted,
    - backups are deleted

    --------------------------------------------------
    |                                                |
    |   by  D A R K   A N G E L S   T E A M !        |
    |                                                |
    --------------------------------------------------

        The best and only thing you can do is to contact us
          to settle the matter before any losses occurs.

--------------------------------------------------------------
```

---

[15] Lawrence Abrams, *Dark Angels ransomware receives record-breaking $75 million ransom*, BLEEPING COMPUTER (Julu 30, 2024), https://www.bleepingcomputer.com/news/security/dark-angels-ransomware-receives-record-breaking-75-million-ransom/
[16] *Id.*
[17] *Id.*
[18] *Id.*

41.     BleepingComputer, an information security and technology news publication,[19] reported that the ransom note linked to a negotiation chat between Defendant and Dark Angels stated that the ransomware gange demanded $51 million for a decryptor and to delete data stolen from Johnson Controls' network.[20]

42.     It was further reported that Dark Angels encrypted Defendant's VMware ESXi virtual machines during the attack and claimed to have stolen over 27 TB of documents containing corporate data.[21]

43.     To data, Defendant has not made any public statements regarding Dark Angels or whether it made a ransomware payment.

44.     On information and belief, even if Defendant paid a ransom demand, this would not ensure the security of Plaintiff's and the Class's PII. While ransomware groups usually remove stolen data from their data leak sites when a ransom is paid, there is no guarantee that the data will be deleted.[22]  That data is valuable and can easily be sold to another threat actor, so there is little incentive to delete it.[23]

45.     Defendant confirmed that data was exfiltrated in a ransomware attack it its November 13, 2023 filing to the Securities and Exchange Commission, where it stated the Data

---

[19] *About BleepingComputer.com*, BLEEPING COMPUTER, https://www.bleepingcomputer.com/about/ (last visited July 3, 2025).
[20] N. 15.
[21] *Id.*
[22] Steve Adler, *Majority of Ransomware Victims That Pay a Ransom Suffer a Second Attack*, THE HIPAA JOURNAL (Feb. 23, 2024), https://www.hipaajournal.com/majority-of-ransomware-victims-that-pay-a-ransom-suffer-a-second-attack/#:~:text=While%20ransomware%20groups%20usually%20remove,little%20incentive%20to%20delete%20it.
[23] *Id.*

Breach "consisted of unauthorized access and deployment of ransomware by a third party" and that it continued to analyze the "data accessed, exfiltrated or otherwise impacted."[24]

46.     As the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[25]

47.     Thus, on information and belief, Plaintiff's and the Class's stolen PII has already been published by Dark Angels on the dark web.

***Plaintiff's Experiences and Injuries***

48.     Plaintiff Frank Hoon was an employee of Defendant from on or around 2016 to on or around 2022.

49.     Thus, Defendant obtained and maintained Plaintiff's PII. As a result, Plaintiff was injured by Defendant's Data Breach.

50.     As a condition of his employment, Plaintiff provided Defendant with his PII. Defendant used that PII to facilitate its business.

51.     Plaintiff provided his PII to Defendant and trusted the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

---

[24] Johnson Controls, Inc. (13 Nov. 2023). Form 8-K 2023. Retrieved from SEC EDGAR website https://www.sec.gov/Archives/edgar/data/833444/000083344423000038/jci-20231113.htm.

[25] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

52.     Plaintiff reasonably understood that a portion of the funds paid to Defendant (and/or derived from his employment) would be used to pay for adequate cybersecurity and protection of PII.

53.     Plaintiff has not yet received Defendant's Breach Notice.

54.     On information and belief, as a result of the Data Breach, Plaintiff's PII has already been published by cybercriminals on the dark web.

55.     On information and belief, via its Data Breach, Defendant compromised at least Plaintiff's name and Social Security number.

56.     Because of the Data Breach, Plaintiff has *already* suffered from numerous instances of identity theft and fraud. Indeed, since the Data Breach occurred on or around September 2023, Plaintiff has observed multiple fraudulent changes made to his financial accounts. Plaintiff has been forced to replace his debit cards four times in the aftermath of the Data Breach. Most recently, in February 2025, Plaintiff was forced to cancel his debit card from Members First Bank after observing fraudulent charges.

57.     Due to the fraud, Plaintiff has had to spend time contacting his financial institutions, reporting the fraud, cancelling his cards, replacing the cards, and reviewing his financial statements.

58.     Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft.

59.     Plaintiff fears for his personal financial security and worries about what information was exposed in the Data Breach.

60.     Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond

allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

61. Plaintiff suffered actual injury from the exposure and theft of his PII and its threatened or actual publication on the dark web—which violates his rights to privacy.

62. Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

63. Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's PII in the hands of cybercriminals.

64. Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

65. Today, Plaintiff has a continuing interest in ensuring that his PII—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

66. Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

    a.    loss of the opportunity to control how their PII is used;

    b.    diminution in value of their PII;

    c.    compromise and continuing publication of their PII;

d.　　out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

　　　e.　　lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

　　　f.　　delay in receipt of tax refund monies;

　　　g.　　unauthorized use of their stolen PII; and

　　　h.　　continued risk to their PII—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the PII.

67.　　Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

68.　　The value of Plaintiff and Class's PII on the black market is considerable. Stolen PII trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "dark web"—further exposing the information.[26]

69.　　It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII far and wide.

70.　　One way that criminals profit from stolen PII is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data—

---

[26] *See* Miklos Zoltan, *Dark Web Price Index 2023*, PRIVACY AFFAIRS (Apr. 23, 2023), https://www.privacyaffairs.com/dark-web-price-index-2023/.

first the stolen PII, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

71.     The development of "Fullz" packages means that the PII exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

72.     In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class members' stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

73.     Defendant disclosed the PII of Plaintiff and Class members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and Class members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

74.     Defendant's failure to promptly and properly notify Plaintiff and Class members of the Data Breach exacerbated Plaintiff and Class members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

*Defendant Knew—Or Should Have Known—of the Risk of a Data Breach*

75.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

76.     In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.[27] Of the 1,862 recorded data breaches, 330 of them, or 17.7% were in the medical or healthcare industry.[28] Those 330 reported breaches exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[29]

77.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[30]

78.     In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.[31]

79.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

---

[27] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.

[28] *Id.*

[29] *Id.*

[30] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[31] *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited Sept. 11, 2023).

***Defendant Failed to Follow FTC Guidelines***

80.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

81.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[32]  The FTC declared that, *inter alia*, businesses must:

    a.      protect the personal customer information that they keep;

    b.      properly dispose of personal information that is no longer needed;

    c.      encrypt information stored on computer networks;

    d.      understand their network's vulnerabilities; and

    e.      implement policies to correct security problems.

82.     The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

83.     Furthermore, the FTC explains that companies must:

    a.      not maintain information longer than is needed to authorize a transaction;

    b.      limit access to sensitive data;

    c.      require complex passwords to be used on networks;

    d.      use industry-tested methods for security;

    e.      monitor for suspicious activity on the network; and

---

[32] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

f.      verify that third-party service providers use reasonable security measures.

84.     The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

85.     In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its clients' and current and former employees' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

86.     Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

87.     Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

88.     Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST

Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

89.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

90.     Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII was compromised in the Data Breach affecting Defendant in September 2023, including all those individuals who received notice of the Data Breach.

91.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

92.     Plaintiff reserves the right to amend the class definition.

93.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

94.     <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

95.     Numerosity. The Class members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class includes at least 3,477 members.

96.     Typicality. Plaintiff's claims are typical of Class members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

97.     Adequacy. Plaintiff will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

98.     Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class members—for which a class wide proceeding can answer for all Class members. In fact, a class wide proceeding is necessary to answer the following questions:

a.     if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

b.     if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.     if Defendant were negligent in maintaining, protecting, and securing PII;

d.     if Defendant breached contract promises to safeguard Plaintiff and the Class's PII;

e.     if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f. if Defendant's Breach Notice was reasonable;

g. if the Data Breach caused Plaintiff and the Class injuries;

h. what the proper damages measure is; and

i. if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

99. <u>Superiority.</u> A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

100. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

101. Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

102.    Defendant owed a duty of care to Plaintiff and Class members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

103.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

104.    Defendant owed these duties to Plaintiff and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class members' PII.

105.    Defendant owed—to Plaintiff and Class members—at least the following duties to:

    a.    exercise reasonable care in handling and using the PII in its care and custody;

    b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

    c.    promptly detect attempts at unauthorized access;

    d.    notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their PII.

106.    Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

107.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

108.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

109.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant.

110.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII— whether by malware or otherwise.

111.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class members' and the importance of exercising reasonable care in handling it.

112.    Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

113.    Defendant breached these duties as evidenced by the Data Breach.

114.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' PII by:

a.      disclosing and providing access to this information to third parties and

b.      failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

115.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiff and Class members' injury.

116.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class members' injuries-in-fact.

117.    Defendant has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

118.    As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

119.    And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

120.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and

lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted

from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing,

imminent, immediate, and which they continue to face.

**SECOND CAUSE OF ACTION**
**Negligence *per se***
**(On Behalf of Plaintiff and the Class)**

121.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

122.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate

computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

123.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce,"

including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as

Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC

publications and orders promulgated pursuant to the FTC Act also form part of the basis of

Defendant's duty to protect Plaintiff and the Class members' sensitive PII.

124.    Defendant breached its respective duties to Plaintiff and Class members under the

FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security

practices to safeguard PII.

125.    Defendant violated its duty under Section 5 of the FTC Act by failing to use

reasonable measures to protect PII and not complying with applicable industry standards as

described in detail herein. Defendant's conduct was particularly unreasonable given the nature and

amount of PII Defendant had collected and stored and the foreseeable consequences of a data

breach, including, specifically, the immense damages that would result to individuals in the event

of a breach, which ultimately came to pass.

126. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

127. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class members would not have been injured.

128. The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

129. Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

130. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

<u>**THIRD CAUSE OF ACTION**</u>
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

131. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

132. Plaintiff and Class members were required to provide their PII to Defendant as a condition of receiving employment provided by Defendant. Plaintiff and Class members provided their PII to Defendant in exchange for Defendant's employment.

133. Plaintiff and Class members reasonably understood that a portion of the funds generated by their employment would be used to pay for adequate cybersecurity measures.

25

134.     Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

135.     Plaintiff and the Class members accepted Defendant's offers by disclosing their PII to Defendant in exchange for employment.

136.     In turn, and through internal policies, Defendant agreed to protect and not disclose the PII to unauthorized persons.

137.     In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and Class Member's PII.

138.     Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

139.     After all, Plaintiff and Class members would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

140.     Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

141.     The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

142. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

143. Defendant materially breached the contracts it entered with Plaintiff and Class members by:

      a.    failing to safeguard their information;

      b.    failing to notify them promptly of the intrusion into its computer systems that compromised such information.

      c.    failing to comply with industry standards;

      d.    failing to comply with the legal obligations necessarily incorporated into the agreements; and

      e.    failing to ensure the confidentiality and integrity of the electronic PII that Defendant created, received, maintained, and transmitted.

144. In these and other ways, Defendant violated its duty of good faith and fair dealing.

145. Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class members' injuries (as detailed *supra*).

146. And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the dark web.

147. Plaintiff and Class members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

<u>**FOURTH CAUSE OF ACTION**</u>
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

148. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

149.     The State of Wisconsin recognizes the right of privacy as codified by Wis. Stat. §
995.50.

150.     Notably, § 995.50(2)(am) defines "invasion of privacy" as including:

    a.    "Intrusion upon the privacy of another of a nature highly offensive to a
reasonable person . . . in a place that a reasonable person would consider
private[.]"

    b.    "Publicity given to a matter concerning the private life of another, of a kind
highly offensive to a reasonable person, if the defendant has acted either
unreasonably or recklessly as to whether there was a legitimate public
interest in the matter involved, or with actual knowledge that none existed."

151.     Plaintiff and the Class had a legitimate expectation of privacy regarding their highly
sensitive and confidential PII and were accordingly entitled to the protection of this information
against disclosure to unauthorized third parties.

152.     Defendant owed a duty to its clients and current and former employees, including
Plaintiff and the Class, to keep this information confidential.

153.     The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class
members' PII is highly offensive to a reasonable person.

154.     The intrusion was into a place or thing which was private and entitled to be private.
Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did
so privately, with the intention that their information would be kept confidential and protected
from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such
information would be kept private and would not be disclosed without their authorization.

155. The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

156. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

157. Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

158. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

159. As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

160. And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the dark web.

161. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII are still maintained by Defendant with their inadequate cybersecurity system and policies.

162. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

163.     In addition to injunctive relief, Plaintiff, on behalf of himself and the other Class members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

164.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

165.     This claim is pleaded in the alternative to the breach of implied contract claim.

166.     Plaintiff and Class members conferred a benefit upon Defendant. After all, Defendant benefitted from (1) their employment and/or (2) using their PII to facilitate its business operations.

167.     Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class members.

168.     Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

169.     Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' PII.

170.     Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

171.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class members' PII and/or profits from their employment because Defendant failed to adequately protect their PII.

172.    Plaintiff and Class members have no adequate remedy at law.

173.    Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class members—all unlawful or inequitable proceeds that it received because of its misconduct.

## SIXTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

174.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

175.    Given the relationship between Defendant and Plaintiff and Class members, where Defendant became guardian of Plaintiff's and Class members' PII, Defendant became a fiduciary by its undertaking and guardianship of the PII, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' PII; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

176.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their PII.

177.    Because of the highly sensitive nature of the PII, Plaintiff and Class members would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII had they known the reality of Defendant's inadequate data security practices.

178.     Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII.

179.     Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

180.     As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

### SEVENTH CAUSE OF ACTION
**Violation of the Wisconsin Deceptive Trade Practices Act**
**Wis. Stat. §§ 100.18, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

181.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

182.     The Wisconsin Deceptive Trade Practices Act ("WDTPA") prohibits a person or firm with intent to offer anything for sale or hire from making any representations to "the public" that are "untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

183.     Here, Defendant violated WDTPA because (1) Defendant represented (affirmatively and/or by omission) to the public that it would keep sensitive information confidential—as to induce the public to disclose such information, (2) such representations were untrue, deceptive, and/or misleading because Defendant used inadequate data security systems, and (3) such representations caused pecuniary losses as detailed infra.

184.     Furthermore, Defendant's WDTPA violations are evidenced by Defendant's various failures which include, *inter alia*:

a.      failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class members' PII, which was a direct and proximate cause of the Data Breach;

b.      failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.      failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq.*, which was a direct and proximate cause of the Data Breach;

d.      omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class members' PII; and

e.      omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*.

185.    Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their PII.

186.    Defendant intended to mislead Plaintiff and Class members and induce them to rely on its omissions.

187.    Had Defendant disclosed to Plaintiff and Class members that its data systems were not secure—and thus vulnerable to attack—Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant accepted the PII that Plaintiff and Class members entrusted to it while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and Class members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

188.    Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Class members' rights.

189.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII.

190.    And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

191.    Plaintiff and Class members seek all monetary and non-monetary relief allowed by law.

## EIGHTH CAUSE OF ACTION
### Declaratory Judgment
### (On Behalf of Plaintiff and the Class)

192.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

193.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

194.    In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

195.    Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

  a. Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

  b. Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

  c. Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

  d. Defendant breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class members.

196.    The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

197.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

198.    And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class members' injuries.

199.    If an injunction is not issued, the resulting hardship to Plaintiff and Class members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

200.    An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class members, and the public at large.

## PRAYER FOR RELIEF

Plaintiff and Class members respectfully request judgment against Defendant and that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.    Enjoining Defendant from further unfair and/or deceptive practices;

E. Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting other relief that this Court finds appropriate.


**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.


Date: July 3, 2025                     Respectfully submitted,

                        By: /s/ *Samuel J. Strauss*
                            Samuel J. Strauss (WI Bar #1113942)
                            Raina C. Borrelli*
                            **STRAUSS BORRELLI PLLC**
                            One Magnificent Mile
                            980 N. Michigan Avenue, Suite 1610
                            Chicago, Illinois 60611
                            Telephone: (872) 263-1100
                            Facsimile: (872) 263-1109
                            sam@straussborrelli.com
                            raina@straussborrelli.com

                            *Pro hac vice forthcoming*

                            *Attorneys for Plaintiff and Proposed Class*