**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| *IN RE: JOHNSON CONTROLS, INC. DATA INCIDENT LITIGATION* | Lead Case No.: 25-cv-00955-BHL |
| This Document Relates To: All Actions | Honorable Brett H Ludwig |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. RELEVANT BACKGROUND ........ 2

A. Johnson Controls, Inc. ........ 2

B. The Data Incident ........ 3

C. Procedural History ........ 3

D. History of Negotiations ........ 4

III. THE PROPOSED SETTLEMENT ........ 4

A. The Settlement Class ........ 4

B. The Settlement ........ 5

1. Monetary Relief ........ 5

2. Credit Monitoring ........ 6

3. Release ........ 6

C. Notice and Settlement Administration ........ 6

D. Exclusion & Objection Procedures ........ 7~~8~~

1. Requests for Exclusion ........ 8

2. Objections ........ 8

IV. LEGAL STANDARD ........ 10

V. ARGUMENT ........ 11

A. The Court Should Grant Class Certification for Settlement Purposes ........ 11

1. The Class is sufficiently numerous and joinder is impracticable ........ 13

2. Questions of law and fact are common to the members of the Settlement Class. ........ 14

3. The Claims of the Plaintiffs are Typical of the Claims of Class Members ........ 15

4. The Class Representatives have and will continue to provide adequate representation for Settlement Class Members ........ 16

5. The Class Satisfies the Requirements of Rule 23(b) ........ 16

B. The Settlement Should be Approved as Fair, Reasonable and Adequate. .................... 18

1. Plaintiffs and Proposed Class Counsel Have Adequately Represented the Class .... 20

2. The Settlement was Negotiated at Arms'-Length by Vigorous Advocates, and There Has Been No Fraud or Collusion ................................................................. 22

3. The Settlement Provides Substantial Relief for the Settlement Class ...................... 23

4. The Settlement Agreement Treats Class Members Equitably to Each Other ........... 28

C. The Parties' Notice Plan Satisfies the Requirements of Rule 23 and Due Process Requirements .......................................................................................................... 28

VI. CONCLUSION ........................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2011 U.S. Dist. LEXIS 84219 (N.D. Ill. July 26, 2011)........................................................ 10

Amchem Prods., Inc. v. Windsor,
521 U.S. 591(1997)........................................................................................... 12, 17, 18

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)............................................................................................... 17

*Antrim v. Carr*,
No. 19-cv-0396-bhl, 2023 U.S. Dist. LEXIS 221665 (E.D. Wis. Dec. 13, 2023).................... 14

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ...................................................................... 10, 19, 21, 22

*Bauer v. Kraft Foods Global, Inc.*,
277 F.R.D. 558 (W.D. Wis. Feb. 15, 2012).................................................................. 14

*Behrens v. Landmark Credit Union*,
17-cv-101-jdp, 2018 U.S. Dist. LEXIS 106358 (W.D. Wis. June 26, 2018) .......................... 21

*Benoskie v. Kerry Foods, Inc*.,
No. 19-cv-684-pp, 2020 U.S. Dist. LEXIS 177538 (E.D. Wis. Sept. 28, 2020)...................... 27

Berglund v. Matthews Senior Hous. LLC,
No. 21-cv-108-pp, 2023 U.S. Dist. LEXIS 185972 (E.D. Wis. Oct. 17, 2023) ...................... 10

*Bruzek v. Husky Energy Inc*.,
18-CV-697-WMC, 2021 WL 9474270 (W.D. Wis. Aug. 6, 2021)......................................... 20

*Bruzek v. Husky Oil Operations Ltd.*,
520 F. Supp. 3d 1079 (W.D. Wis. Feb. 19, 2021) ................................................................ 14

*Carriuolo v. Gen. Motors Co*.,
823 F.3d 977 (11th Cir. 2016) ............................................................................................ 14

*CV Reit, Inc. v. Levy*,
144 F.R.D. 690 (S.D. Fla. 1992)........................................................................................... 16

*Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) ................................................................................................. 19

*Fox v. Iowa Health System*,
2020 WL 5678704 (W.D. Wisc. 2020)............................................................................ 12, 13

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009) ................................ 21

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ............................................................................. 10, 20

*Grady v. de Ville Motor Hotel, Inc.*,
415 F.2d 449 (10th Cir. 1969) ............................................................................ 24

*Groshek v. Great Lakes Higher Educ. Corp*.,
15-cv-143-jdp, 2016 U.S. Dist. LEXIS 125089 (W.D. Wis. Apr. 13, 2016) ........................... 22

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................ 24

*Hapka v. CareCentrix, Inc.*,
No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018).................................. 17

*Hills v. Essentia Health*,
19-cv-907-wmc, 2021 U.S. Dist. LEXIS 244810 (W.D. Wis. Dec. 23, 2021)......................... 15

*In re Anthem, Inc. Data Breach Litig*.,
327 F.R.D. 299 (N.D. Cal. 2018)......................................................................... 17

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010).......................................................................... 24

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740 (D.S.C. May 14, 2024)................... 25

*In re Fortra File Transfer Software Data Sec. Breach Litig.,*
(Case Nos. omitted), 2025 U.S. Dist. LEXIS 23719 (S.D. Fla. Feb. 11, 2025) ........... 13, 17, 27

*In re Northfield Labs., Inc. Sec. Litig.*,
No. 06 C 1493, 2012 U.S. Dist. LEXIS 12741 (N.D. Ill. Jan. 31, 2012) ................................ 20

*In re Onix Grp., LLC Data Breach Litig.*,
NO. 23-2288-KSM, 2024 U.S. Dist. LEXIS 225686 (E.D. Pa. Dec. 13, 2024)........... 13, 17, 27

*In re Phila. Inquirer Data Sec. Litig.*,
NO. 24-2106-KSM, 2025 U.S. Dist. LEXIS 48541 (E.D. Pa. Mar. 18, 2025)......................... 27

*In re Retina Grp. of Wash. Data Sec. Incident Litig.*,
No. DKC 24-0004, 2025 U.S. Dist. LEXIS 139159 (D. Md. July 21, 2025)........................... 13

*In re TikTok, Inc., Consumer Privacy Litigation,*
565 F. Supp. 3d 1076 (N.D. Ill. 2021) ........................................................... 10, 11, 16

*In re Wasserstrom Holdings, Inc. Data Breach Litig.*,
No. 2:23-cv-2070, 2025 U.S. Dist. LEXIS 105490 (S.D. Ohio Apr. 11, 2025) ........................ 13

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ........................................................................................ 19, 20

*Karpilovksy v. All Web Leads, Inc.*,
2017-cv-01307 (N.D. Ill. Aug. 8, 2019) ............................................................................ 27

*Kaufman v. Am. Express Travel Related Servs. Co.*,
877 F.3d 276 (7th Cir. 2017) .............................................................................................. 19

*Kessler v. Am. Resorts Int'l.*,
No. 05-cv-5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ............................................... 10

*King v. Trek Travel, LLC*,
18-cv-345-wmc, 2019 U.S. Dist. LEXIS 215838 (W.D. Wis. Dec. 12, 2019) ......................... 27

*Lacy v. Cook Cty.*,
897 F.3d 847 (7th Cir. 2018) .............................................................................................. 15

*Linman v. Marten Transp., Ltd.,*
No.: 3:22-cv-00204-jdp, 2024 U.S. Dist. LEXIS 225166 (W.D. Wis. Dec. 11, 2024) ............ 23

*Loop LLC v. CDK Glob., LLC*,
24-cv-571-jdp, 2025 U.S. Dist. LEXIS 82123 (W.D. Wis. Apr. 29, 2025) ............................ 26

*McFields v. Dart*,
982 F.3d 511 (7th Cir. Dec. 8, 2020) .................................................................................. 15

*Mullane v. Cent. Hanover Bank & Trust Co.,*
339 U.S. 306 (1950) ........................................................................................................... 28

*Muro v. Target Corp.*,
580 F.3d 485 (7th Cir. 2009) .............................................................................................. 15

*Orr v. Shicker*,
953 F.3d 490 (7th Cir. 2020) .............................................................................................. 13

*Oshana v. Coca-Cola Co.,*
472 F.3d 506 (7th Cir. 2006) .............................................................................................. 15

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) .............................................................................................. 26

*Retired Chi. Police Ass'n v. City of Chi.,*
7 F.3d 584 (7th Cir. 1993) .................................................................................................. 16

*Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) .......... 11

*Ross v. Gossett*,
33 F.4th 433 (7th Cir. 2022) .......... 17

*Synfuel Techs, Inc. v. DHL Express (USA), Inc*.,
463 F.3d 646 (7th Cir. 2006) .......... 21, 24

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011).......... 14, 15

*Wright v. Nationstar Mortg. LLC*,
No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729 (N.D. Ill. Aug. 29, 2016).......... 23, 25

**Other Authorities**

Conte & Newberg,
*Newberg on Class Actions* (4th ed. 2002).......... 10, 19, 24

Duke Law School,
*Implementing 2018 Amendments to Rule 23*.......... 28, 29

*Newberg*, *Manual for Complex Litigation* (Fourth).......... 12, 20

**Rules**

Federal Rules of Civil Procedure, Rule 23 .......... *passim*



Case 2:25-cv-00955-BHL Filed 07/24/26 Page 7 of 39 Document 37

## I. INTRODUCTION

In September 2023, Johnson Controls, Inc. ("Johnson Controls" or "Defendant") became aware of a cyber incident that involved the disruption of its information technology systems. Based on its investigation, Defendant determined that an unauthorized actor accessed certain Johnson Controls systems from approximately February 1, 2023 to September 30, 2023, and potentially gained access to and exfiltrated certain data from its systems, including Private Information[1] (the "Data Incident"). Plaintiffs are current and former employees and customers of Defendant who received notice that their Private Information may have been compromised as a result of the Data Incident. Plaintiffs filed the operative Consolidated Class Action Complaint in this Action on December 3, 2025 (ECF No. 23).

After the exchange of pertinent information through an informal discovery process and after attending a full-day mediation session with experienced mediator Hon. David E. Jones (Ret.), the Parties came to an agreement on a settlement in principle.

Plaintiffs now, by and through their counsel, present this Unopposed Motion for Preliminary Approval of the Class Action Settlement. *See* Settlement Agreement ("S.A."), attached as **Exhibit A** to the Declaration of Class Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement ("Counsel Decl.") filed herewith. The Settlement is structured to provide significant relief to the approximately 578,699 individuals who received notice that their Private Information was potentially impacted by the Data Incident by establishing a non-reversionary Settlement Fund of $5,475,000.00. The Settlement Fund is structured to provide: (1) the ability of all Settlement Class Members to claim two years of one-

[1] Unless otherwise noted, all capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement.

bureau Credit Monitoring; (2) up to $5,000.00 per Settlement Class Member for reimbursement of Documented Losses sustained as a result of the Data Incident; (3) a *pro rata* Alternative Cash payment estimated at $50.00 in lieu of a claim for Documented Losses; (4) the cost of notice and settlement administration; and (5) court-approved attorneys' fees and costs and Service Awards for the Class Representatives. If approved, the Settlement will bring certainty, closure, and significant and valuable relief to those individuals as opposed to what otherwise would likely be contentious and costly litigation over Defendant's alleged failure to adequately safeguard the Private Information of the Settlement Class.

Plaintiffs now seek preliminary approval of the Settlement, certification of a Settlement Class, appointment of Class Counsel, and approval of the proposed form and method of class notice. This memorandum describes in detail the reasons why preliminary approval is in the best interests of the Settlement Class Members and is consistent with Federal Rule 23. As discussed in more detail below, the proposed class should be certified and the settlement preliminarily approved so that notice may issue to the class.

## II. RELEVANT BACKGROUND

### A. Johnson Controls, Inc.

Plaintiffs allege that Defendant is a company offering building technology, software and services to healthcare providers, schools, data centers, airports, stadiums, and hotels. Consolidated Class Action Complaint ("Compl."), ECF No. 23, ¶ 27. Plaintiffs allege that as part of its business, Defendant receives and maintains the Private Information of its current and former employees and clients. *Id.* ¶ 29.

Plaintiffs further allege that their Private Information, which they tendered to Defendant as a condition of receiving employment and/or services, was contained in Defendant's computer

systems at the time of the Data Incident. *Id*. ¶¶ 29-30. Such Private Information may have included Plaintiffs' and Settlement Class Members names, Social Security numbers, dates of birth, health insurance and medical information, financial account information, government identification numbers, and biometric data. S.A. ¶ 49.

### B. The Data Incident

On September 24, 2023, Defendant became aware of a cyber incident that involved the disruption of its information technology infrastructure. Compl." ¶ 40. Defendant launched an investigation, which revealed that from February 1, 2023 to September 30, 2023, an unauthorized actor may have accessed information on certain of Defendant's systems. *Id*. On June 30, 2025, Defendant notified Plaintiffs and the Settlement Class that their Private Information may have been affected by the Data Incident. *Id*. ¶¶ 40, 154, 177, 200, 221, 238, 261, 284, 302.

### C. Procedural History

Starting on July 3, 2025, Plaintiffs filed actions against Defendant arising out of the Data Incident. *See* ECF No. 1. Plaintiffs consolidated their actions, and on December 3, 2025, filed their Consolidated Class Action Complaint, bringing claims for negligence, breach of implied contract, breach of fiduciary duty, breach of confidence, unjust enrichment/quasi contract, violation of California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200, *et seq*., and violation of the California Consumer Privacy Act ("CCPA") Cal. Civ. Code §§ 1798.100, *et. seq*.

On January 29, 2026, the Court stayed the Action pending mediation. ECF No. 28. On May 4, 2026, the Parties filed a joint notice of settlement indicating that they had reached an agreement in principle to settle the Action on a class-wide basis. ECF No. 29.

### D. History of Negotiations

On or around early December 2025, the Parties began to discuss a potential settlement. Counsel Decl. ¶ 7. On or around mid-January 2026, to avoid time consuming and expensive motion practice and discovery, the Parties agreed to use experienced mediator Hon. David E. Jones (ret.) to attempt to reach a settlement. *Id*. Judge Jones has extensive experience in class action mediation generally and data breach mediation in particular. *Id*.

Prior to the mediation, the parties exchanged informal discovery pursuant to Federal Rule of Evidence 408. *Id*. ¶ 8. The Parties also prepared confidential mediation submissions. *Id*. This allowed the Parties to be well-informed prior to engaging in settlement discussions.

On April 28, 2026, the Parties attended an in-person mediation with Judge Jones. *Id*. ¶ 9. At all times, the settlement negotiations were highly adversarial, non-collusive, and conducted at arm's length. *Id*. After exchanging numerous settlement proposals under the guidance of Judge Jones, with each being evaluated in the context of comparable cases, expected litigation costs, and the risks inherent in continued proceedings, the Parties reached an agreement in principle. *Id.* Over the ensuing months, the Parties continued negotiating the finer points of the Settlement Agreement, diligently drafting and finalizing the Settlement, Notice, and Claim Forms, and drafting this motion for preliminary approval for presentment to the Court. *Id*. ¶ 10.

## III. THE PROPOSED SETTLEMENT

### A. The Settlement Class

The proposed Class is defined as:

> All living individuals residing in the United States who were sent notice that their Private Information may have been compromised as a result of the Data Incident.

S.A. ¶ 59. The Settlement specifically excludes: (a) directors or officers of Defendant, and any entity in which Defendant has a controlling interest; (b) governmental entities; (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff; (d) any Settlement Class Member who timely and validly opted out of the Settlement; and (e) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident, or who pleads *nolo contendere* to any such charge. *Id*.

The Settlement Class is comprised of approximately 578,699 individuals. *Id*. ¶ 21.

**B. The Settlement**

The Settlement negotiated on behalf of the Settlement Class provides for the creation of a non-reversionary common fund in the amount of $5,475,000. *Id.* ¶ 61. The fund is structured to provide cash benefits and credit monitoring to Settlement Class Members, as well as the costs of notice and administration, and court approved attorneys' Fee and Expenses Award and Service Award. *Id*. ¶¶ 61, 66.

*1. Monetary Relief*

First, Settlement Class Members can claim up to $5,000.00 per person for Documented Losses incurred as a result of the Data Incident. S.A. ¶ 69(b). To receive a documented loss payment, a Settlement Class Member must attest under penalty of perjury to having incurred documented losses. *Id*. Settlement Class Members will be required to submit reasonable documentation supporting the losses. *Id*. Further, the loss was fairly traceable to the Data Incident if it was incurred between February 1, 2023, and the date the Claim was submitted. Examples of Documented Losses include, but are not limited to: losses associated with identity theft or fraud, postage, copying, scanning, faxing, mileage and other travel-related charges, parking, notary

charges, research charges, cell phone charges (only if charged by the minute), long distance phone charges, data charges (only if charged based on the amount of data used), text message charges (only if charged by the message), bank fees; and professional fees, such as fees for accountants and attorneys. *Id*.

Second, in lieu of submitting a Claim for Documented Losses, Settlement Class Members are eligible to make a claim for a *pro rata* Alternate Cash payment from the Settlement Fund, estimated to be $50.00. *Id*. ¶¶ 61, 71. Settlement Class Cash Payments will be subject to a *pro rata* increase in the event the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. *Id*. ¶ 72. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the Cash Payments will be reduced *pro rata* accordingly. *Id*.

*2. Credit Monitoring*

All Settlement Class Members are eligible to enroll in two (2) years of one-bureau Credit Monitoring, regardless of whether the Settlement Class Member submits a Claim for Documented Losses or an Alternate Cash payment. *Id*. ¶¶ 25, 69(a).

*3. Release*

The release in this case is tailored to the claims that have been pleaded or could have been plead related to the Data Incident. *See id*. ¶¶ 50-54, 110. Settlement Class Members who do not exclude themselves will release any and all claims arising from the Data Incident and/or the recordkeeping or data security practices in place at the time of the Data Incident. *Id*. ¶¶ 52, 82.

### C. Notice and Settlement Administration

After gathering competitive bids, and subject to Court approval, the Parties have agreed to use Kroll Settlement Administration as the Settlement Administrator. Counsel Decl. ¶ 11; S.A. ¶¶ 56, 75. The Notice plan requires direct notice be provided by U.S. mail. S.A. ¶ 79. Within forty-

five (45) days of entry of the date when the Preliminary Approval Order (S.A., Ex. 4) is entered, the Settlement Administrator will send the Postcard Notice (S.A., Ex. 1) to Settlement Class Members. *Id.* ¶ 79. For any Notices returned as undeliverable, the Settlement Administrator will use reasonable efforts (*e.g.*, skip tracing) to identify an updated mailing address and re-mail the postcard if one is identified. *See id*. The Postcard Notice will include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form with a QR code linked to the Claim Form on the Settlement Website; the Claim Form Deadline; the Opt-Out Deadline for Settlement Class Members to opt-out of the Settlement Class; the Objection Deadline for Settlement Class Members to object to the Settlement and/or the Application for Attorneys' Fees, Costs and Service Awards; the Final Approval Hearing date; and the Settlement Website address. *Id.* ¶ 80.

The Settlement Administrator will also establish a dedicated Settlement Website where Settlement Class Members can obtain notice and information about the Settlement, including hyperlinked access to the Settlement Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, proposed Class Counsel's Application for Attorneys' Fees, Costs, and Service Award, and the Final Approval Order. *Id.* ¶¶ 63, 81. The Settlement Website will also contain a Court-approved online Claim Form that can be submitted directly via the Settlement Website as well as a printable version that can be sent by U.S. Mail to the Settlement Administrator. *Id.* ¶ 81.

**D. Exclusion & Objection Procedures**

The timing of the Notice is structured to provide that Settlement Class Members have adequate time to review the terms of the Settlement and decide whether they would like to opt-out or object. Counsel Decl. ¶ 20.

*1. Requests for Exclusion*

To request exclusion from the Settlement, a Settlement Class Member must, within 60 days from the Notice Date, make their request in writing, by mailing a request to opt-out to the Settlement Administrator postmarked no later than the Opt-Out Deadline. S.A. ¶ 43, 82. The opt-out request must: (a) be personally signed by the Settlement Class Member; (b) contain the requestor's full name, mailing address, telephone number, and email address (if any); and (c) include a statement indicating a request to be excluded from the Settlement Class. Any Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of the Settlement Agreement even if that Settlement Class Member does not submit a Valid Claim. *Id.* ¶ 82.

*2. Objections*

To object to the Settlement, a Settlement Class Member must, within 60 days from the Notice Date, file the objection with the Court, and send the objection via U.S. Mail to proposed Class Counsel, Defendant's Counsel, and the Settlement Administrator. *Id.* ¶¶ 42, 83. For an objection to be considered by the Court, the relevant Settlement Class Member must not have excluded herself from the Settlement Class. *Id.* ¶ 83.

In addition, to be valid, the objection must also set forth: the objector's full name, mailing address, telephone number, and email address (if any); all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; the number of times the objector has objected to a class action settlement within the 5 years preceding the date

that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Award; the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years; that any objector or objector's counsel who uses Artificial Intelligence to assist in drafting their objection must disclose that they used it and what platform they used. *Id.*

The objection must also include the identity of all counsel (if any) representing the objector, whether their counsel will appear at the Final Approval Hearing, a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any), a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearin, and the objector's signature (an attorney's signature is not sufficient). *Id.*

The specific deadlines for filing exclusion requests and objections will be identified in the Short Form Notice directly sent to Class Members and will be described in more detail in the Long Form Notice that will be available to all Class Members on the Settlement Website. *Id.* ¶¶ 63, 80, 82 Ex. 1-2.

## IV. LEGAL STANDARD

Courts review proposed class action settlements using a well-established two-step process. *See* Conte & Newberg, *Newberg on Class Actions*, § 11.25, at 38-39 (4th ed. 2002); *see also In re TikTok, Inc., Consumer Privacy Litigation,* 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021). At the first, preliminary approval stage, the district court must make three essential inquiries.

First, the court must determine whether it "will likely be able" to certify the putative class for purposes of judgment on the proposed settlement. *In re TikTok,* 565 F. Supp. 3d at 1083, citing Fed. R. Civ. P. 23(e)(1)(B)(ii); *see Berglund v. Matthews Senior Hous. LLC,* No. 21-cv-108-pp, 2023 U.S. Dist. LEXIS 185972, at *5 (E.D. Wis. Oct. 17, 2023).

Second, the district court must determine whether the proposed settlement is "within the range of possible approval" with regard to the criteria set forth in Rule 23 (e)(2). The purpose of the inquiry is only "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing," *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982), "not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards[.]" *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,* 2011 U.S. Dist. LEXIS 84219, at *32 (N.D. Ill. July 26, 2011). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l.*, No. 05-cv-5944, 2007 U.S. Dist. LEXIS 84450, at *17 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).

Finally, if the district court finds that it will likely be able to certify the putative class for settlement purposes and that the proposed settlement is within the range of possible approval, the court must then direct the Plaintiffs to provide notice "in a reasonable manner to all class members

who would be bound" by the proposed settlement agreement. Fed. R. Civ. P. 23 (e)(1); *In re TikTok, Inc,* 565 F. Supp. 3d at 1083.

## V. ARGUMENT

"Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). When parties seek preliminary approval of a class action settlement agreement under Rule 23(e), the district court must: (1) determine whether it will likely be able to certify the putative class for purposes of judgment on the proposed settlement; (2) determine whether the proposed settlement is within the range of possible approval with regard to the criteria set forth in Rule 23(e); and (3) approve the proposed notice plan and direct the Plaintiffs to provide notice "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. *In re Tiktok,* 565 F. Supp. 3d at 1084 (internal citations omitted).

Here, the Settlement meets the standards for certification for settlement purposes; the proposed settlement is an outstanding result for Settlement Class Members and well within the range of possible approval; and the notice program proposed by the Parties meets all requirements of due process and Rule 23. Thus, this Court should grant preliminary approval.

### A. The Court Should Grant Class Certification for Settlement Purposes

The Parties have agreed that, for settlement purposes only, the Court should make preliminary findings and enter an Order granting provisional certification of the Class and appointing Plaintiffs as Class Representatives and Raina Borrelli of Strauss Borrelli PLLC, Jeff Ostrow of Kopelowitz Ostrow P.A., Gary Klinger of Milberg PLLC, and Kevin Laukaitis of Laukaitis Law, LLC. as Class Counsel. "The validity of use of a temporary settlement class is not

usually questioned." *Newberg*, §11.22. The *Manual for Complex Litigation* explains the benefits of settlement classes:

> Settlement classes – cases certified as class actions solely for settlement – can provide significant benefits to class members and enable the Defendant to achieve final resolution of multiple suits. Settlement classes also permit Defendant to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved[.]…An early settlement produces certainty for the Plaintiffs and Defendant and greatly reduces litigation expenses.

*Manual for Complex Litigation* (Fourth) § 21.612.

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Because a court evaluating certification of a class action that has settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened; as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.; see also Yvonne Mart Fox v. Iowa Health Sys.,* 18-cv-327-jdp, 2020 U.S. Dist. LEXIS 177466, at *7 (W.D. Wisc. Sept. 16, 2020). Other certification issues however, such as "those designed to protect absentees by blocking

unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem*, 521 U.S. at 620.

Class actions are regularly certified for settlement. In fact, numerous similar data breach class actions have been recently certified on a national basis. *In re Retina Grp. of Wash. Data Sec. Incident Litig.*, No. DKC 24-0004, 2025 U.S. Dist. LEXIS 139159, at *7-8 (D. Md. July 21, 2025); *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-cv-2070, 2025 U.S. Dist. LEXIS 105490, at *27 (S.D. Ohio Apr. 11, 2025); *In re Fortra File Transfer Software Data Sec. Breach Litig.,* (Case Nos. omitted), 2025 U.S. Dist. LEXIS 23719, at *26 (S.D. Fla. Feb. 11, 2025); *In re Onix Grp., LLC Data Breach Litig.*, NO. 23-2288-KSM, 2024 U.S. Dist. LEXIS 225686, at *48 (E.D. Pa. Dec. 13, 2024). This Class should be similarly certified. *See Yvonne Mart Fox v. Iowa Health Sys.,* No.: 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640, at *8-9 (W.D. Wis. Mar. 4, 2021) (granting final approval of data breach class action settlement).

Here, the Class meets the requirements of Rules 23(a) and 23(b)(3) for settlement purposes and warrants certification.

*1. The Class is sufficiently numerous and joinder is impracticable*

Numerosity is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "a forty-member class is often regarded as sufficient to meet the numerosity requirement," *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020), 40 is not a magic number; courts have certified classes of fewer than 40 members and denied certification of larger classes. *Antrim v. Carr*, No. 19-cv-0396-bhl, 2023 U.S. Dist. LEXIS 221665,

at *8 (E.D. Wis. Dec. 13, 2023). Here, the proposed Class encompasses over 578,699 individuals. S.A. ¶ 21, 26. Numerosity is satisfied.

*2. Questions of law and fact are common to the members of the Settlement Class.*

Commonality is satisfied where common questions are capable of generating "common answers apt to drive the resolutions of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id*. at 2556; *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 984 (11th Cir. 2016) (same); *Bauer v. Kraft Foods Global, Inc.,* 277 F.R.D. 558, 562 (W.D. Wis. Feb. 15, 2012) (finding commonality where central issues were common to whole class).

Here, the questions of law and fact at issue arise from common operative facts—the circumstances concerning Data Incident—and commonality is satisfied because the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members. *Bruzek v. Husky Oil Operations Ltd.*, 520 F. Supp. 3d 1079, 1094 (W.D. Wis. Feb. 19, 2021). Plaintiffs' claims center on whether Defendant failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members. For example, issues that are common to all class members include:

- Whether Defendant owed and breached a duty to exercise due care in collecting, storing, and/or safeguarding Plaintiffs' and Settlement Class Members' Private Information;

- Whether Defendant knew or should have known that it allegedly did not employ reasonable measures to keep the Private Information of Plaintiffs and Settlement Class Members secure; and

- Whether Defendant violated the law by failing to promptly notify Plaintiffs and Settlement Class Members that their Private Information had been compromised.

*See* Compl. ¶ 326.

Here, these common questions, and others alleged by Plaintiffs in their Consolidated Class Action Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis because they all tie back to the same common nucleus of operative facts—the Data Incident and Defendant' data protection measures. *See Lacy v. Cook Cty*., 897 F.3d 847, 865 (7th Cir. 2018) (holding a common injury is one that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.") (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Thus, Plaintiffs have satisfied the commonality requirement of Rule 23 for settlement purposes.

*3. The Claims of the Plaintiffs are Typical of the Claims of Class Members*

Commonality is met where the named plaintiff's claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members and are based on the same legal theory. *Hills v. Essentia Health*, 19-cv-907-wmc, 2021 U.S. Dist. LEXIS 244810, at *21 (W.D. Wis. Dec. 23, 2021). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and…[the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). Put another way, although the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named Plaintiffs and those of other class members, the requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. *McFields v. Dart*, 982 F.3d 511, 518 (7th Cir. Dec. 8, 2020) (quoting *Muro v. Target Corp*., 580 F.3d 485, 492 (7th Cir. 2009))

In this case, Plaintiffs and all Settlement Class Members arise out of the same course of conduct—that Defendant allegedly collected and failed to adequately protect the Class Members'

Private Information—and assert the same theories of liability. As a result, the typicality requirement is satisfied.

*4. The Class Representatives have and will continue to provide adequate representation for Settlement Class Members*

The "adequacy" requirement of Rule 23(a) has two components: (1) the representatives must not possess interests which are antagonistic to the interests of the class, and (2) the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation. *In re Tiktok, Inc.,* 565 F. Supp. 3d at 1085 (quoting *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992)); *Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 598 (7th Cir. 1993). Here, the Plaintiffs and proposed Class Counsel meet the test of adequacy.

First, Plaintiffs' interests are entirely representative of and consistent with the interests of the Settlement Class Members: allegedly have had their personal identifying information compromised due to the alleged shortfalls in Defendant's data security measures. *See* Compl. ¶¶ 102-117. The Class Representatives pursuit of this matter demonstrated that they have been, and will remain, zealous advocates for the Settlement Class. Plaintiffs have the same interests as the Settlement Class and are (more than) suitable representatives.

Similarly, proposed Class Counsel have regularly engaged in major complex litigation, have extensive experience in class action lawsuits, and indeed, are among the leaders in pursuing complex data breach class actions in Wisconsin and across the country. Counsel Decl. ¶ 15, Exs. B-E. Accordingly, Plaintiffs and their counsel will adequately represent the Settlement Class.

*5. The Class Satisfies the Requirements of Rule 23(b).*

a. <u>Common questions of law and fact predominate</u>

Predominance is satisfied by "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Ross v. Gossett*, 33

F.4th 433, 439 (7th Cir. 2022) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. Further, when a settlement class is proposed, the manageability criteria of Rule 23(b)(3) do not apply. *Id.* at 620.

In this case, the key predominating questions are whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information of Plaintiffs and the Settlement Class, and whether Defendant breached that duty. *See* Compl. ¶¶ 81-93, 102-117. The common questions that arise from Defendant's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312-15 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also In re Fortra,* 2025 U.S. Dist. LEXIS 23719, at *41 (finding predominance satisfied where "[a]ll Settlement Class Members had their Private Information compromised in the Data Incident and the security practices at issue did not vary from person to person."); *In re Onix Grp.*, 2024 U.S. Dist. LEXIS 225686, at *15 (holding commonality met because "the proposed class members all suffered from the same data breach. There are common questions as to how the data breach occurred, whether [Defendant] had a duty to protect [consumers], and whether the [consumers] were harmed by the breach."); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68185, at *7 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case because "[t]he many common

questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"). Thus, this case meets the requirement of predominance.

b. <u>A class action is the superior method for resolving these claims</u>

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims via settlement in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Here, the resolution of over five hundred thousand claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantees an increase in judicial efficiency and conservation of resources over the alternative of individually litigating hundreds of thousands of individual data breach cases arising out of the *same* Data Incident.

The common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the Settlement Class should be certified for settlement purposes.

**B. The Settlement Should be Approved as Fair, Reasonable and Adequate.**

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular,

> there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 283 (7th Cir. 2017). Approval of a class action settlement is a two-step process. *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*, 134 F3d 873 (7th Cir. 1998). First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range of possible approval. *Id*. If the court preliminarily approves the settlement, the class members are notified. *See id*.

The purpose of the preliminary hearing for a proposed settlement is to identify any issues *before* notice goes out to the class. Rule 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). At preliminary approval, the court looks to determine whether the proposed settlement is "within the range of possible approval." *Bruzek v. Husky Energy Inc.*, 18-CV-697-WMC, 2021 WL 9474270, at *3 (W.D. Wis. Aug. 6, 2021) (citing *Gautreaux*, 690 F.2d at 621 n.3). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Fed. R. Civ. P. 23(e)(1)(B).

The second step in the process, occurring only after notice has been issued to the class, is a final fairness hearing. Fed. R. Civ. P. (e)(2); *see also* Manual for Complex Litigation, § 21.633-34; *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 U.S. Dist. LEXIS 12741, at *15-16 (N.D. Ill. Jan. 31, 2012) ("Second, the court holds a fairness hearing and considers, among other things, any objections filed by class members."). As explained below, consideration of the relevant factors supports preliminarily approving the Settlement and issuing notice.

*1. Plaintiffs and Proposed Class Counsel Have Adequately Represented the Class*

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, federal courts "naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). This is especially true, where, as here, the class action matter has a reputation as being

complex. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) ; *see also Armstrong*, 616 F.2d at 313. This matter is no exception.

Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. At the outset of their investigation, proposed Class Counsel conducted extensive research into Plaintiffs' claims, Defendant's business, and the Data Incident. Counsel Decl. ¶ 3. The culmination of that process led to the Action, the Parties informal exchange of discovery, and the Parties' settlement negotiations under the guidance of Judge Jones. *Id.* ¶¶ 7-10. Indeed, the documents and information Defendant supplied in informal discovery enabled proposed Class Counsel to fully evaluate the case. *Id*. ¶ 8. Furthermore, even after reaching an agreement on the central terms, the Parties spent months fully negotiating the finer points of the Settlement Agreement. *Id*. ¶ 10. Thus, and considering proposed Class Counsels' extensive experience in data breach litigation (*see id.* ¶ 15, Exs. B-E), the Parties were able to carry out settlement negotiations with a full understanding of the strengths and weaknesses of the case, as well as the potential value of the claims. *See Behrens v. Landmark Credit Union*, 17-cv-101-jdp, 2018 U.S. Dist. LEXIS 106358, at *15-16 (W.D. Wis. June 26, 2018) (granting preliminary approval to privacy class settlement where the parties exchanged discovery which "indicates that the parties have considered the merits and risks of litigating compared to settling.").

In addition, the adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See Majeski v. Balcor Entertainment Co.,* 134 F.R.D. 240, 248 (E.D. Wis. Jan. 18, 1991). Here, as discussed *supra*, Plaintiffs' claims are aligned with the claims of the other Settlement Class Members. Plaintiffs thus have every incentive to vigorously pursue the claims of the Settlement

Class, as they have done to date by assisting in the investigation of the case, providing the documents and other information needed to draft the Consolidated Complaint, maintaining contact with counsel, reviewing pleadings, providing documents in the informal discovery process, remaining available for consultation throughout the negotiations, answering counsel's many questions, and reviewing the Settlement Agreement. Counsel Decl. ¶ 13. Further, Plaintiffs have retained qualified and competent counsel with extensive experience in litigating consumer class actions, and privacy actions in particular. *See, e.g.*, *Groshek v. Great Lakes Higher Educ. Corp*., 15-cv-143-jdp, 2016 U.S. Dist. LEXIS 125089, at *9 (W.D. Wis. Apr. 13, 2016).

In a case where experienced counsel represents the Class, the Court "is entitled to rely upon the judgment of the parties' experienced counsel." *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015); *Armstrong*, 616 F.2d at 315 ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Here, proposed Class Counsel believes that the Parties' settlement is fair, reasonable, and adequate, and in the best interests of the members of the Class. Counsel Decl. ¶ 16. Proposed Class Counsel also believes that the benefits of the Parties' settlement far outweigh the delay and considerable risk of proceeding to trial. *Id.*

2. *The Settlement was Negotiated at Arms'-Length by Vigorous Advocates, and There Has Been No Fraud or Collusion*

As discussed above, the Settlement is the product of informed, adversarial, and arm's-length negotiations under the guidance of experienced and respected mediator Judge David E. Jones. Counsel Decl. ¶¶ 7-9. Prior to the April 28, 2026 mediation, Plaintiffs requested, and Defendant produced, informal discovery that enabled Plaintiffs to ascertain key information about the size and scope of the Data Incident. *Id.* ¶ 8. Further, the Parties submitted confidential mediation statements prior to the mediation, cementing their knowledge of the strengths and

weaknesses of Plaintiffs' claims and Defendant's defenses. *Id*. Throughout the mediation, the settlement negotiations were adversarial, non-collusive, and conducted at arm's length. *Id.* ¶ 9. After the session with Judge Jones, the Parties reached an agreement in principle but still spent several months finalizing all settlement terms and documents. *Id*. ¶¶ 9-10.

Importantly, negotiations over attorneys' fees and the service awards did not begin until the Parties had reached agreement on the material terms of class relief, ensuring that proposed Class Counsel's interests did not conflict with the interests of the Settlement Class. *Id*. ¶ 12. In short, the negotiations reflect the hallmarks of a fair and non-collusive process: they were conducted under the guise of an experienced mediator, were informed by targeted discovery, involved multiple substantive exchanges, and were led by experienced counsel committed to the best interests of the Settlement Class.

Accordingly, it is clear that this Settlement was negotiated at arm's length and absent any fraud or collusion. *See, e.g.*, *Linman v. Marten Transp., Ltd.,* No.: 3:22-cv-00204-jdp, 2024 U.S. Dist. LEXIS 225166, at *3 (W.D. Wis. Dec. 11, 2024) (finally approving settlement "negotiated at arm's-length, in good faith and without collusion."); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, at *42 (N.D. Ill. Aug. 29, 2016) (finding no evidence of fraud or collusion where the parties participated in two prior mediations and engaged in lengthy discovery). Thus, this factor weighs in favor of preliminary approval.

*3. The Settlement Provides Substantial Relief for the Settlement Class*

The Settlement provides for substantial relief, especially considering the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the Plaintiffs' case on the merits balanced against the amount offered in

the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to Plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Here, the Settlement provides a non-reversionary $5,475,000 Settlement Fund. S.A. ¶¶ 39, 65-66. All Settlement Class Members can elect to receive two years of one-bureau Credit Monitoring. All Settlement Class Members may choose to claim compensation for Documented Losses up to $5,000.00, or claim a *pro rata* Alternate Cash payment. *Id*. ¶¶ 69-72. The amount of each payment will be determined on a *pro rata* basis from the Settlement Fund. *Id*. ¶ 72.

a. <u>The costs, risks, and delay of trial and appeal favor approval of the Settlement</u>

The value achieved through the Settlement Agreement here is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Defendant will assert a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to survive a motion to

dismiss, a motion for class certification and a motion for summary judgment. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—especially certification—which has been denied in other data breach cases. *See In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740, at *94 (D.S.C. May 14, 2024).[2] Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 U.S. Dist. LEXIS 155137, at *8 (D. Minn. Nov. 17, 2015).

Moreover, due to the quickly evolving nature of case law pertaining to data protection, it is likely that a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and Settlement Class Members can have a chance at relief.

Plaintiffs dispute the defenses Defendant is likely to assert, but it is obvious that their likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits…, the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright*, 2016 U.S. Dist. LEXIS 115729, at *39.

b. <u>The method of providing relief is effective</u>

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the

[2] Plaintiffs note the court in *Blackbaud* found a lack of ascertainability, which is not at issue here because Defendant maintains the very data—due to Defendant's relationships with the Class—necessary to determine who was the subject of the Data Incident and what Private Information was taken from each Settlement Class Member.

adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This Settlement proposes to provide significant relief to individual affected by the Data Incident: Credit Monitoring, up to $5,000.00 in compensation for victims who experienced Documented Losses, such as identify theft, following the Data Incident, or a *pro rata* Alternate Cash payment estimated to be $50.00. Counsel Decl. ¶ 18; S.A. ¶¶ 69-72. Further, Settlement Class Members will be able to choose an electronic payment or paper check at their election via Claim Form. S.A. ¶ 96. Accordingly, all Settlement Class Members will receive their award with a reasonable amount of time. Thus, the means by which the relief will be distributed is fair, efficient, and effective.

c. <u>The proposed award of attorneys' fees is fair and reasonable</u>

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Proposed Class Counsel will seek an award of attorneys' fees in the amount of $1,825,000.00 (one-third of the Settlement Fund). S.A. ¶ 106. This percentage fee requested falls well within that of approved data breach (and other) class settlements in Wisconsin District courts and in courts throughout the nation. *Loop LLC v. CDK Glob., LLC*, 24-cv-571-jdp, 2025 U.S. Dist. LEXIS 82123, at *7 (W.D. Wis. Apr. 29, 2025) (noting "courts commonly approve fees that represent one-third of the total, after expenses are subtracted") (quoting *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782-83 (7th Cir. 2014)); *In re Phila. Inquirer Data*

*Sec. Litig.*, NO. 24-2106-KSM, 2025 U.S. Dist. LEXIS 48541, at *35-37, *41 (E.D. Pa. Mar. 18, 2025) (approving 33% fee award distribution of a common fund of $525,000); *In re Fortra File Transfer Software Data Sec. Breach Litig.,* (case nos. omitted), 2025 U.S. Dist. LEXIS 23719, at *56 (S.D. Fla. Feb. 11, 2025) (approving attorney's fees of 33.3%, of the $7,000,000.00 common fund and $39,237.40 in reasonable litigation costs); *In re Onix Grp., LLC Data Breach Litig.*, NO. 23-2288-KSM, 2024 U.S. Dist. LEXIS 225686, at *7. *46-47 (E.D. Pa. Dec. 13, 2024) (approving attorney's fees of 33.3% of the $1,250,000 common fund and $12,032 in litigation expenses); *Benoskie v. Kerry Foods, Inc*., No. 19-cv-684-pp, 2020 U.S. Dist. LEXIS 177538, at *7 (E.D. Wis. Sept. 28, 2020) (fining attorney' fees in the amount of one-third (33%) "fair and reasonable and approximates the market rate"); *King v. Trek Travel, LLC*, 18-cv-345-wmc, 2019 U.S. Dist. LEXIS 215838, at *6-7 (W.D. Wis. Dec. 12, 2019) (approving attorneys' fees and costs of $140,250, representing one-third of the settlement fund); *Karpilovksy v. All Web Leads, Inc.*, 2017-cv-01307, ECF No. 173 (N.D. Ill. Aug. 8, 2019) (approving fees of 35% of the settlement fund). Proposed Class Counsel achieved an excellent result for the Class after undertaking substantial risk in bringing this action on a pure contingency basis, and Plaintiffs should be fairly compensated. *See* Counsel Decl. ¶ 4.

Prior to final approval, proposed Class Counsel will file an application for an award of attorneys' fees, costs and Service Awards, addressing in detail the facts and law supporting their fee request, and the anticipated fee request will likewise be stated in the Notices. *See* S.A. ¶¶ 35, 80, 83. At this stage of settlement approval, the operative question is whether the requested fees and costs are within the range of possible approval and support preliminary approval of the Settlement Agreement. As the cases cited above demonstrate, they are, and this factor supports preliminary approval.

d. <u>Additional agreements do not undercut the adequacy of the Settlement</u>.

There are no previously undisclosed agreements that would undercut the adequacy of the Settlement. Thus, this factor should weigh in favor of approval.

*4. The Settlement Agreement Treats Class Members Equitably to Each Other*

Here, the proposed Settlement does not improperly discriminate between any segments of the Class. All Class Members may claim each form of monetary and non-monetary relief offered. S.A. ¶¶ 69-72. Importantly, direct Notice will be sent to Settlement Class Members. All Settlement Class Members will also have the opportunity to object to or exclude themselves from the settlement. *Id*. ¶¶ 82-84.

Accordingly, this factor also weighs in favor of preliminary approval.

**C. The Parties' Notice Plan Satisfies the Requirements of Rule 23 and Due Process Requirements**

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The notice provisions of Rule 23 were amended because means of communication have evolved, and permitting notice by electronic means, including e-mails, digital media, and social media, may provide the best practicable notice under the circumstances. Duke Law School, *Implementing 2018 Amendments to Rule 23*, Rules Appendix C, at *17-18.23. Specifically, the amended language expressly provides that notice can be made by one or a

combination of means, including "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

The Committee Note to amended Rule 23 advises: "Counsel should consider which method or methods of giving notice will be most effective; simply assuming that the 'traditional' methods are best may disregard contemporary communication realities." Duke Law School, *Implementing 2018 Amendments to Rule 23*, Rules Appendix C, at *19. Consistent with that directive, proposed Class Counsel and the Settlement Administrator structured the Notice to provide that Settlement Class Members adequate time to review the terms of the Settlement Agreement, elect to receive benefits, or decide whether they would like to opt-out or object. For any Notices returned as undeliverable, the Settlement Administrator will use reasonable efforts, including skip tracing, to obtain updated addresses and re-mail the Notice. S.A. ¶ 79.

Here, notice will be provided directly to individual Settlement Class Members via the contact information they provided to Defendant. *See id*. ¶ 21. The Postcard Notice will be directly sent via postcard through First Class U.S. mail to Settlement Class Members and will also be made available on the Settlement Website. *Id*. ¶¶ 79-80. Further, the Settlement Website will enable Settlement Class Members to view relevant documents, get answers to frequently asked questions, and elect to receive benefits, or decide to opt-out or object. *See id.* ¶ 81.

Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). This information is

included in both the Long Form Notice and Postcard Notice in language that is easy to understand. S.A., Ex. 1-2.

Because the Notice Program set forth in the Settlement Agreement satisfies the requirements of due process and Federal Rule of Civil Procedure 23, and provides the best notice practicable under the circumstances, the Court should direct the Parties and the Settlement Administrator to proceed with providing notice to Settlement Class Members pursuant to the terms of the Settlement Agreement and its order granting preliminary approval.

## VI. CONCLUSION

For all the reasons started, Plaintiffs respectfully request that this Court (1) conditionally approve the Parties' Settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (2) appoint Plaintiffs Jennifer C. Gorman, Hal Bauer, Derek Hefley, Carol McKinnon, Frank Waddell, Chris Broadhead, Mohammad Asem Alkhatib, and William John Pacheco as Class Representatives, (3) appoint Raina Borrelli of Strauss Borrelli PLLC, Jeff Ostrow of Kopelowitz Ostrow P.A., Gary Klinger of Milberg PLLC, and Kevin Laukaitis of Laukaitis Law, LLC as Class Counsel, (4) provisionally certify the Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (5) approve the Parties' proposed Notice Program, and confirm that it is appropriate notice and that it satisfies due process and Rule 23, (6) set deadlines for Settlement Class Members to submit objections and requests for exclusion, and (7) set a date for a Final Approval Hearing. A proposed Preliminary Approval Order is attached to the Settlement Agreement, at Exhibit 4, and is also submitted herewith.

Dated: July 24, 2026

Respectfully submitted,

By: /s/ *Jeff Ostrow*

Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

Raina C. Borrelli (*pro hac vice*)
Samuel J. Strauss (SBN 1113942)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
raina@straussborrelli.com
sam@straussborrelli.com

Gary M. Klinger
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252.0878
gklinger@milberg.com

Kevin Laukaitis
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
Tel: (215) 789-4462
klaukaitis@laukaitislaw.com

*Interim Co-Lead Class Counsel*

**CERTIFICATE OF SERVICE**

I, Jeff Ostrow, hereby certify that on July 24, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

*/s/ Jeff Ostrow*
Jeff Ostrow